IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 4, 2016

**STATE OF TENNESSEE v. JONATHON WAYNE THOMPSON**

**Appeal from the Circuit Court for Lawrence County**
**No. 31625     Stella L. Hargrove, Judge**
_____

**No. M2016-00129-CCA-R3-CD – Filed November 4, 2016**
_____


Defendant, Jonathon Wayne Thompson, was convicted of theft of property valued over $500 but less than $1000.  He received a sentence of one year and six months, with 90 days to serve in incarceration on consecutive weekends and the remainder to be served on supervised probation.  On appeal, Defendant challenges the sufficiency of the evidence and the trial court's decision to deny full probation.  Upon our review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

Brandon E. White (on appeal), Columbia, Tennessee; Claudia Jack, District Public Defender; and Robert Stovall, Jr. (at trial), Assistant District Public Defender, for the appellant, Jonathon Wayne Thompson.

Herbert H. Slatery III, Attorney General and Reporter; Robert W. Wilson, Assistant Attorney General; Brent A. Cooper, District Attorney General; and Emily Hartman, Assistant District Attorney General, for the appellee, State of Tennessee.


**OPINION**

*Factual Background*

In May 2013, the Lawrence County Grand Jury indicted Defendant for one count of theft of property valued over $1000 but less than $10,000.  Defendant was accused of

stealing hunting equipment from Daniel "Bud" Smith and John Kress. The case went to trial on September 24, 2015.

Mr. Smith and Mr. Kress were friends and avid deer hunters. They shared a hunting lease on property located in Lawrence County. The men had set up tree stands, hunting blinds, and game cameras for use during hunting season. After hunting season was over, in March 2013, Mr. Smith went to the property to perform maintenance on some of the equipment. He discovered that several tree stands, hunting blinds, and game cameras were missing. He called Mr. Kress before calling the police.

Mr. Smith reported that he was missing a Guide Gear Portable Climbing Stand, two "buddy stands," and "gilly suit material" that he placed along the shooting rails of the tree stands. Mr. Kress reported that he was missing a Summit Viper Climbing Stand, a Field and Stream Climbing Stand, a hunting blind, and two game cameras. Mr. Kress later found one of the cameras on the ground 50 yards away from where it was originally placed.

Eventually, police discovered three tree stands at a pawn shop in Florence, Alabama. Neither the stands nor the associated pawn tickets showed the brand names of the stands. Defense counsel introduced into evidence photographs showing the brand names Next, Skyline, and Direct Products located on the camouflage fabric on the stands. The police contacted the victims, who were able to identify the stands as the ones stolen from them.

Mr. Smith testified that his Guide Gear stand is "not a very common stand that people hunt with" because its weight made it less portable. He testified that he believed that his was the only Guide Gear stand within "four surrounding counties" because he had inquired about that particular stand at several sporting goods stores in Loretto, Knoxville, and Franklin, Tennessee, and Florence, Alabama. He eventually ordered the stand from a catalogue as a Christmas present for his son. Mr. Smith testified that the Guide Gear stand came with camouflage made by Direct Products. However, he admitted that he did not specifically mark his stand or put his name anywhere on it. Mr. Smith did not testify as to the value of his tree stand but did state that he was still missing about $200 worth of property.

Mr. Kress testified that the other two stands belonged to him. He testified that even though his tree stands were similar to others, he had made several additions and modifications to the stands. He testified that the Summit Viper stand had two different types of camouflage material made by Next and Skyline, Inc. He stated that he moved several of the straps to different locations, added his own straps and rope, and pointed out places where the paint had chipped off of the stand. Mr. Smith confirmed that the straps on one of Mr. Kress's stands were not standard "factory" straps. Mr. Kress testified that

he added stirrups to the other stand to make it easier to climb. Mr. Kress stated that none of the stands listed the brand names on the stands. Mr. Kress did not testify directly as to the value of his two tree stands but did testify that his unrecovered hunting blind was worth $300 and his unrecovered game camera was worth $150.

The pawn tickets showed that Defendant had pawned the three stands on February 20, 2013. In completing the bill of sale, Defendant provided his full name and address, showed his driver's license, and signed a statement under penalty of perjury that the items belonged to him and were not stolen. Defendant received $100 for the three stands. The police contacted Defendant, who agreed to meet with them at his father's home.

Trooper Rob Franks, an officer with the Tennessee Highway Patrol at the time of trial, testified that he was working as an officer with the Lawrence County Sheriff's Office in March of 2013 and that he assisted Investigator Jody Shadix with the investigation of this case.[1] He accompanied Investigator Shadix to Defendant's father's home and participated in the interview of Defendant. Defendant was asked whether he knew of any stolen tree stands in the area, which Defendant denied. Defendant was then presented with the pawn tickets for the three stands. Defendant admitted pawning the stands but stated that he did not steal them. Trooper Franks testified that Defendant did not tell the officers that he owned the tree stands but that he claimed that he pawned the tree stands for someone else. On cross-examination, Trooper Franks admitted that over two years had elapsed between the interview and the trial, that the interview was not recorded, and that only Investigator Shadix took notes.

Following a *Momon*[2] hearing, Defendant testified on his own behalf. Defendant admitted that he pawned the tree stands but denied stealing them. Defendant testified that he had owned two of the stands for over ten years and the third for around six years. Defendant denied telling the officers that he pawned the tree stands for someone else. Defendant testified that all tree stands look alike and admitted that he did not know the brand names of the stands he pawned. Defendant testified that he pawned the stands because he was in between jobs and needed some money. Defendant received $100 for the stands from the pawn shop.

After hearing this evidence, the jury found Defendant guilty of the lesser-included offense of theft of property valued over $500 but less than $1000. The trial court held a sentencing hearing on November 19, 2015.

---

[1] Investigator Shadix passed away prior to trial.

[2] *See Momon v. State*, 18 S.W.3d 152, 162 (Tenn. 1999).

Defendant's presentence report was entered into evidence. Alisha Hilton, a probation and parole officer for the State of Tennessee, testified that Defendant missed his scheduled meeting with her because he could not get a ride. In a written statement, Defendant claimed that the tree stands he pawned had been in his father's barn and that he had owned them for years. Defendant reported that he has been self-employed as a carpenter since 2009 but that he lost his job because of his coming to court. The presentence report indicated that Defendant had nine prior misdemeanor convictions and that, after his trial, he had picked up new charges for driving on a suspended license and violating the financial responsibility and seatbelt laws.

Defendant testified on his own behalf at the sentencing hearing. He continued to deny that he stole the victims' tree stands. Defendant stated that all tree stands look alike and that the victims could not positively identify the pawned tree stands as those that were stolen from them. Defendant stated that he "never stole" and that he was "fixing to get in trouble for something [he] didn't do." As to his ability to pay restitution, Defendant testified that he is self-employed as a carpenter, that the amount he makes each week is dependent upon the weather, and that he has been getting fewer referrals for subcontracted work because of his coming to court. Defendant testified that he owed $400 per month in child support in addition to about $9000 in arrearages. Defendant testified that he lived in a trailer owned by his parents and that he does not pay rent.

The trial court found that several of Defendant's prior convictions were for violent offenses but noted that there was no credible evidence that he had violated his probation on those offenses. The trial court also found that Defendant was on bond for this case when he received new charges. The trial court noted that Defendant continued to maintain his innocence, which meant that "rehabilitation would not be an issue." The trial court accredited the trial testimony of the victims that they could distinguish their tree stands from others. As an enhancement factor, the trial court gave some weight to the fact that the offense involved more than one victim. As a mitigating factor, the trial court determined that Defendant's conduct did not threaten serious bodily injury.

The trial court imposed a Range I sentence of one year and six months. The trial court ordered that Defendant serve 90 days of his sentence in incarceration "because . . . I feel that there should be a consequence for each infraction of the law." The trial court noted that if Defendant was working, he would be allowed to serve those 90 days on weekends. The trial court ordered Defendant to pay court costs and $880 of restitution.

Defendant filed a motion for new trial, which was denied by the trial court on December 14, 2015. With permission from this Court, Defendant late-filed a notice of appeal on January 15, 2016.

*Analysis*

- 4 -

## I. Sufficiency of the Evidence

Defendant argues that the evidence was insufficient to support his conviction. Specifically, Defendant argues that there was no evidence presented that the tree stands found at the pawn shop were manufactured by the companies listed in the police report, leaving the jury to "speculate" that the tree stands were those owned by Mr. Smith and Mr. Kress. The State responds that the evidence was sufficient because the victims were able to identify the tree stands as the ones stolen from their property based on specific and unique details.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. The relevant question is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury's verdict replaces the presumption of innocence with one of guilt; therefore, the burden is shifted onto the defendant to show that the evidence introduced at trial was insufficient to support such a verdict. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). The prosecution is entitled to the "'strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom.'" *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Questions concerning the "'credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact.'" *Wagner*, 382 S.W.3d at 297 (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)). "'A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory.'" *Reid*, 91 S.W.3d at 277 (quoting *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). It is not the role of this Court to reweigh or reevaluate the evidence, nor to substitute our own inferences for those drawn from the evidence by the trier of fact. *Id*. The standard of review is the same whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of the two. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009).

"A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 39-14-103. Theft of property is a Class E felony when the value of the property is more than $500 but less than $1000. T.C.A. § 39-14-105(a)(2). Thefts from multiple victims may be charged in a single indictment, and the value of the property aggregated, "if the criminal acts arise from a common scheme, purpose, intent or enterprise." *Id*. at (b)(1)-(2). A "person who acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's

conscious objective or desire to engage in the conduct or cause the result." T.C.A. § 39-11-302(a). A "person acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." *Id*. at (b).[3]

In the light most favorable to the State, the evidence presented at trial showed that Defendant pawned three tree stands at a pawn shop in Florence, Alabama. Both Mr. Smith and Mr. Kress were able to identify the stands as the ones discovered missing from their hunting lease based on specific unique characteristics, including the brand names of the camouflage material on the stands as well as specific additions and modifications that they made to the stands. The victims did not give Defendant permission to take or pawn the tree stands. The jury, as was its prerogative, clearly rejected Defendant's testimony that he had owned the tree stands for several years. Though the victims did not testify to the value of the recovered tree stands, they did testify that they were still missing over $500 worth of property, in addition to the $100 Defendant received from the pawn shop. This evidence was sufficient for a rational juror to find Defendant guilty of theft of property valued over $500 but less than $1000. Defendant is not entitled to relief.

## II. Sentencing

Defendant argues that the trial court abused its discretion by imposing a sentence of split-confinement instead of full probation. The State responds that the trial court properly imposed a sentence within the statutory range and consistent with the purposes and principles of sentencing.

When an accused challenges any aspect of his sentence, this Court will review the trial court's decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 706 (Tenn. 2012). A trial court abuses its discretion when it "applies an incorrect legal standard or reaches a conclusion that is 'illogical or unreasonable and causes an injustice to the party complaining.'" *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007) (quoting *State v. Ruiz*, 204 S.W.3d 772, 778 (Tenn. 2006)). This standard of review applies equally to a trial court's decision regarding the manner of service of a sentence. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). This Court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in

---

[3] This Court has held that theft of property is a nature-of-conduct offense rather than a result-of-conduct offense. *See State v. Hershel David Standridge*, No. M2002-01699-CCA-R3-CD, 2003 WL 22243249, at *6 (Tenn. Crim. App. Sept. 30, 2003) (citing *State v. Tracy F. Leonard*, No. M2001-00368-CCA-R3-CD, 2002 WL 1987963, at *26 (Tenn. Crim. App. Aug. 28, 2002), *perm. app. denied* (Tenn. Dec. 16, 2002); *State v. Marcus Webb*, No. W2002-00614-CCA-R3-CD, 2003 WL 214451, at *4 (Tenn. Crim. App. Jan. 29, 2003), *perm. app. denied*, (Tenn. July 7, 2003)), *perm. app. denied* (Tenn. Mar. 16, 2004).

compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. Moreover, under those circumstances, we may not disturb the sentence even if we had preferred a different result. *See State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). The party appealing the sentence has the burden of demonstrating its impropriety. T.C.A. § 40-35-401, Sent'g Comm'n Cmts.; *see also State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

An alternative sentence is any sentence that does not involve total confinement. *See State v. Fields*, 40 S.W.3d 435 (Tenn. 2001). A defendant is eligible for alternative sentencing if the sentence actually imposed is ten years or less, unless the defendant was convicted of certain enumerated offenses. T.C.A. § 40-35-303(a). A defendant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony should be considered a favorable candidate for alternative sentencing. T.C.A. § 40-35-102(6)(A). However, "the burden of establishing suitability for probation rests with the defendant." T.C.A. § 40-35-303(b). The defendant must prove that probation will "subserve the ends of justice and the best interest of both the public and the defendant." *Carter*, 254 S.W.3d at 347 (internal quotation omitted).

Trial courts are encouraged to use alternative sentencing when appropriate. *See* T.C.A. § 40-35-103(6). When determining the manner of service of a sentence, the trial court should consider whether:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant; . . . .

T.C.A. § 40-35-103(1). The trial court should consider the circumstances of the offense; the defendant's criminal record, social history, and present condition; the deterrent effect on the defendant; the defendant's potential or lack of potential for rehabilitation; and the best interests of both the defendant and the public. *State v. Kendrick*, 10 S.W.3d 650, 656 (Tenn. Crim. App. 1999); T.C.A. § 40-35-103(5). A trial court may also consider the defendant's general attitude and behavior since his arrest. *See State v. Blackhurst*, 70 S.W.3d 88, 97 (Tenn. Crim. App. 2001). A defendant's lack of candor and failure to accept responsibility for his role in the offense "'militate[] against the grant of probation.'" *State v. John Clayton Fields II*, No. M2014-01691-CCA-R3-CD, 2015 WL

4072503, at \*6 (Tenn. Crim. App. July 6, 2015) (quoting *State v. Souder*, 105 S.W.3d 602, 608 (Tenn. Crim. App. 2002)), *perm. app. denied* (Tenn. Oct. 23, 2015).

Theft of property valued more than $500 but less than $1000 is a Class E felony. T.C.A. § 39-14-105(a)(2). For Range I offenders, a trial court is authorized to sentence a person convicted of a Class E felony to a sentence between one and two years. T.C.A. § 40-35-112(a)(5). In this case, the trial court imposed a sentence of one year and six months. This sentence length is clearly within the appropriate range and, therefore, presumptively reasonable under *Bise*.

Regarding the manner of service, the trial court denied Defendant's request for full probation, noting that Defendant had nine prior misdemeanor convictions. The trial court also determined that Defendant received additional charges while out on bond in this case. Because Defendant continued to "adamantly den[y]" any responsibility for the theft of the victims' hunting equipment, the trial court found that confining Defendant was necessary to avoid depreciating the seriousness of the offense. *See State v. Gutierrez*, 5 S.W.3d 641, 647 (Tenn. 1999) (holding that a defendant's failure to acknowledge "culpability for his actions supports a finding that a sentence of confinement is necessary to avoid depreciating the seriousness of this crime"). These findings are consistent with the purposes and principles of sentencing.

Defendant relies on this Court's opinion in *State v. Tammy Marie Haribson*, No. M2015-01059-CCA-R3-CD, 2016 WL 613907 (Tenn. Crim. App. Feb. 12, 2016), *no perm. app. filed*, to support his argument that the trial court erred in denying full probation. In that case, the defendant was convicted of theft of property valued over $1000 for the theft of a ring from her employer. She received a sentence of three years suspended after the service of six months. The trial court found that the denial of full probation was necessary to avoid unduly depreciating the seriousness of the offense and to provide an effective deterrent. This Court held that the trial court failed to articulate specific facts justifying the denial of full probation and that the trial court's "personal belief about the need for deterrence [was] not evidence." *Id.* at \*4 (citing *State v. Davis*, 940 S.W.2d 558, 560 (Tenn. 1997); *State v. Dowdy*, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994)). Additionally, for the trial court to rely on the seriousness of the offense to deny full probation, the nature of the offense, as committed, must be "especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree" such that it "outweigh[s] all other factors [favoring] a grant of probation." *Id.* at \*5 (quoting *State v. Travis*, 622 S.W.2d 529, 534 (Tenn. 1981)) (second alteration in original). In *Tammy Marie Harbison*, the circumstances of the offense did not rise to the level required to alone support the denial of probation. *Id.* at \*6. This Court held that there was "no substantial evidence in the record that would justify the denial of probation." *Id.* at \*2.

This case is easily distinguishable from *Tammy Marie Harbison*. The defendant in *Tammy Marie Harbison* had very little criminal history—a single prior charge of passing worthless checks that was dismissed upon the payment of costs. Defendant, on the other hand, had nine prior misdemeanor convictions, including several assault and domestic violence convictions. Additionally, Defendant obtained new charges while on bond for this case. The defendant in *Tammy Marie Harbison* also accepted responsibility and expressed remorse for her actions. Defendant, on the other hand, continued to "adamantly den[y]" any involvement in the theft of the victims' hunting equipment and continued to maintain that the pawned tree stands belonged to him. These facts, which the trial court clearly articulated in the record, are sufficient to justify the denial of full probation even if the circumstances of the offense could not be characterized as "especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree." The trial court did not abuse its discretion in ordering Defendant to serve his sentence in split confinement.

## Conclusion

Based on the foregoing, we affirm the judgment of the trial court.

_____
TIMOTHY L. EASTER, JUDGE